# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                    |                      |
|------------------------------------|----------------------|
| WYNSHIP W. HILLIER,                |                      |
|     *Plaintiff*, |                      |
|     v.         | No. 16-cv-1836 (DLF) |
| DEPARTMENT OF HOMELAND SECURITY,   |                      |
|     *Defendant*. |                    |

## MEMORANDUM OPINION

Wynship Hillier, proceeding *pro se*, brings this action against the Department of Homeland Security (DHS) under the Privacy Act of 1974, 5 U.S.C. § 552a. Before the Court is DHS's Renewed Motion for Summary Judgment, Dkt. 73. For the reasons that follow, the Court will grant DHS's motion.

## I.     BACKGROUND

In 2012, Hillier filed Privacy Act requests with the Central Intelligence Agency, DHS, and the U.S. Department of State, seeking records concerning alleged "involuntary outpatient treatment" that "seemed to have Federal cooperation." Second Am. Compl. ¶ 2, Dkt. 33. On September 12, 2018, this Court granted in part the government's motion for summary judgment with respect to the CIA and the Department of State and denied the motion in part with respect to DHS.[1] *See Hillier v. CIA* (*Hillier I*), No. 16-cv-1836, 2018 WL 4354947 (D.D.C. Sept. 12, 2018).

---

[1] In its first opinion, the Court held that the CIA had conducted an adequate search, *see Hillier I* at *7, and properly provided a *Glomar* response, *see id.* at *9. It also held that the Department of

The search of one database remains in dispute: DHS's search of the DHS/ALL-031 database, or the Information Sharing Environment (ISE) Suspicious Activity Reporting (SAR) Initiative System of Records.[2] In its initial opinion, the Court ruled that DHS's declaration lacked sufficient detail for the Court to determine whether DHS's search was adequate.[3] *See Hillier I* at \*13. Specifically, the Court held that it was unclear (1) whether the Office of Intelligence and Analysis was the only DHS component reasonably likely to have responsive records in DHS/ALL-031, and (2) whether the Office's searches of DHS/ALL-031 covered all DHS components' suspicious activity reports or only the Office's reports. *See* September 12, 2018 Order at 1; *Hillier I* at \*13–14.

On December 20, 2018, DHS filed a renewed motion for summary judgment, supported by supplemental declarations from Brendan Henry, DHS's Acting Chief of the Privacy and Intelligence Oversight Branch of the Office of Intelligence and Analysis, and James V.M.L. Holzer, the Deputy Chief FOIA Officer for the DHS Privacy Office. *See* Henry Decl. ¶ 1, Dkt. 73-1; Holzer Decl. ¶¶ 1–2, Dkt. 73-8. In response, Hillier filed an opposition to the renewed motion for summary judgment, Dkt. 77, a motion for discovery conference, Dkt. 84, and a

---

State conducted an adequate search and found no responsive records. *See id.* at \*16–17. This earlier opinion contains an extensive discussion of the facts that the Court does not repeat here. See *id.* at \*1–2, \*9–14.

[2] Hillier also requested that DHS search two other databases: DHS/IA-001, the system that contains all records over which DHS' Office of Intelligence and Analysis exercised control, and DHS/ALL-030, the Terrorist Screening Database System of Records. *See* Sepeta Decl. ¶ 9, 12. Hillier does not appear to challenge these searches here. *See Hillier I* at \*13.

[3] DHS effectively searched DHS/ALL-031 twice. First, it searched DHS/ALL-031 when it searched DHS/IA-001 in response to Hillier's January 12, 2012 request because that search covered all records controlled by the Office of Intelligence and Analysis. Sepeta Decl. ¶ 22. Second, it searched ALL-031 on May 8, 2012. *Id.* ¶¶ 16, 23.

2

motion to take judicial notice, Dkt. 85.[4]

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one with the potential to change the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See id.* All facts and inferences must be viewed in the light most favorable to the requester, and in a FOIA case, the agency bears the burden of showing that it complied with the applicable legal standard. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009). Courts in this jurisdiction recognize that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations" have been met. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam). Agency affidavits are accorded a presumption of good faith*, SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory

---

[4] Hillier suggests that he may move to amend his complaint. *See* Pl.'s Br. at 1, Dkt. 77-2. A party may amend its pleading once as a matter of course, but otherwise, it can amend only with the other party's consent or the Court's leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). This Court has already granted Hillier leave to amend twice. To the extent Hillier seeks to amend his complaint a third time, his motion is denied because DHS has not consented and he has not shown that "justice so requires."

statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (internal quotation marks omitted).

## III. ANALYSIS

Based on all of DHS's declarations, including the Henry declaration, the Holzer declaration and the earlier declaration from former Privacy and Intelligence Oversight Branch Chief Arthur Sepeta, Dkt. 40-2, the Court concludes that DHS conducted an adequate search. As explained here, DHS's supplemental declarations clarify that the Office of Intelligence and Analysis's search of DHS/ALL-031 covered all DHS components' suspicious activity reports. The Court also rejects Hillier's requests for an *in camera* review because DHS's supplemental declarations are sufficiently detailed and the record shows no evidence of bad faith.[5]

### A. Adequacy of the Search

To prevail on a motion for summary judgment regarding the adequacy of a search, an agency must show "beyond material doubt" that it "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). This standard applies to requests under both FOIA and the Privacy Act. *See Chambers*, 568 F.3d at 1005 (stating that "the Privacy Act, like FOIA, requires" that a search be "reasonably calculated to uncover all relevant documents" (internal quotation marks omitted)); *see*

---

[5] In addition to his motion to take judicial notice, Hillier appears to have made a request for judicial notice in his brief opposing summary judgment, *see* Pl.'s Br. Ex. 2. The Court declines to take judicial notice because Hillier seeks judicial notice of materials that are unnecessary to the resolution of the motions for summary judgment and do not affect the Court's opinion. *See Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (denying request for judicial notice of articles that would not alter the court's opinion). The Court also denies Hillier's motion for discovery conference, Dkt. 84, as moot because it concludes DHS conducted an adequate search of DHS/ALL-031.

*also Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986) (per curiam). The relevant standard for this inquiry is "reasonableness," *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (citation omitted), not whether the agency "actually uncovered every document extant," *SafeCard Servs.*, 926 F.2d at 1201. A search is considered adequate when an agency shows that "it made a good faith effort" and used "methods which can be reasonably expected to produce" the requested records. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Simply put, the government must "show that its search efforts were reasonable and logically organized to uncover relevant documents," but "it need not knock down every search design advanced by [the] requester." *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). At the summary judgment stage, the court can rely on "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Chambers*, 568 F.3d at 1003 (internal quotation marks omitted).

The search was reasonable because the Henry and Holzer declarations clarify that the Office of Intelligence and Analysis's search of DHS/ALL-031 covered the suspicious activity reports of that office and all other DHS components. As explained, the Privacy Office referred Hillier's DHS/ALL-031 request to the Office of Intelligence and Analysis because that office uses the DHS/ALL-031 system to compile and access suspicious activity reports, which are maintained on the DHS Nationwide Suspicious Activity Report Initiative (NSI) Shared Space Server. *See* Holzer Decl. ¶¶ 5–7. The NSI Shared Space program allowed the Office of Intelligence and Analysis to query and retrieve any responsive records from all DHS components. *See id.* ¶ 6; Henry Decl. ¶ 11. Further, "[a]dditional searches by other DHS components being granted access to this system would not locate additional responsive records."

5

Holzer Decl. ¶ 6. Thus, DHS utilized "methods which can be reasonably expected to produce" the requested records. *See Oglesby*, 920 F.2d at 68.

Hillier questions the good faith of the DHS declarants, but government affidavits are entitled to "substantial weight," and their sufficiency "is not undermined by a mere allegation of agency misrepresentation or bad faith." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979); *see also Baez v. U.S. Dep't of Justice*, 647 F.2d 1328, 1333 (D.C. Cir. 1980) ("General allegations of agency bad faith in other instances—either hypothetical or actual—will not undermine the veracity of the agency's affidavit submitted in support of its classification decision."). Even though it took DHS over six months to finish processing Hillier's Privacy Act request, this does not demonstrate that the agency acted in bad faith. *See* Pl.'s Br. at 3. It is well established that "delays in responding to a FOIA request are rarely, if ever, grounds for discrediting later affidavits by the agency." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see also Boyd v. Criminal Div. of DOJ*, 475 F.3d 381, 391 (D.C. Cir. 2007) (several month delay in responding to initial FOIA request did not constitute evidence of bad faith); *Bartko v. DOJ*, 102 F. Supp. 3d 342, 352–53 (D.D.C. 2015) (several months of agency delay is insufficient for finding of bad faith).

Nor do apparent inconsistencies between the Henry Declaration and DHS's previous statements about the DHS/ALL-031 search give rise to an inference of bad faith. As an initial matter, it is questionable whether there are inconsistencies between Sepeta's earlier statement that DHS had only searched "the subset of suspicious activity reports that would be under the control of [the Office of Intelligence and Analysis] and otherwise covered by DHS/ALL-031," Sepeta Decl. ¶ 22, and Henry's later representation that the Office of Intelligence and Analysis searched the suspicious activity reports of every DHS component. *See* Pl.'s Br. at 2. The Henry

declaration simply clarifies that each individual DHS component *controlled* its own suspicious activity reports. The Office of Intelligence and Analysis was able to *search* all of the component suspicious activity reports, and it did so here. *See* Henry Decl. ¶ 11. The Henry Declaration also explains ambiguous language in DHS's November 26, 2013 letter. *See* Def.'s Br. Ex. E., Dkt. 73-6. While the letter suggested that Hillier "must make separate requests" to access suspicious activity reports of "other NSI participants," *id.*, Henry clarifies that the "other NSI participants" to whom DHS referred were "non-DHS component participants." Henry Decl. ¶ 11. As such, the Office of Intelligence and Analysis did in fact search all DHS components' suspicious activity reports. *Id.* Regardless, inconsistent positions do not imply bad faith. *See, e.g.*, *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) (rejecting the plaintiffs' argument that the government's "inconsistent positions" on disclosure suggests bad faith); *SafeCard Servs.*, 926 F.2d at 1202 (holding that inconsistencies in government affidavits "support neither the allegation that the SEC's search procedures were inadequate, nor an inference that it acted in bad faith").

Hillier's suggestion that DHS failed to produce responsive records because the Office of Intelligence and Analysis could *query* but not *release* other components' suspicious activity reports found under the NSI Shared Spaces program is mere conjecture. *See* Pl.'s Br. at 5–6. There is no evidence that the Office of Intelligence and Analysis found but was unable to release documents responsive to Hillier's request. Indeed, the declarations state that the Office of Intelligence and Analysis found no responsive records. *See* Sepeta Decl. ¶¶ 11, 21, 23; Henry Decl. ¶ 9; *see also* Sepeta Decl. Ex. C., Dkt. 40-2. The presumption of good faith accorded to agency affidavits "will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771 (D.C. Cir. 1981).

In addition, the Court rejects Hillier's request for discovery on the "timing and causes" of Sepeta's reassignment from his former role and the "motives and circumstances" of the recent decision to transfer oversight of the NSI Shared Space database from DHS to the FBI. Pl.'s Br. at 9–10. Discovery in FOIA cases is "rare," *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003), and Hillier fails to demonstrate how the discovery he seeks would support his speculative claims. *See Competitive Enter. Inst. v. NASA*, 989 F. Supp. 2d 74, 96 (D.D.C. 2013) (citations omitted) ("[S]peculative claims about spoliation are not sufficient to rebut the presumption of good faith accorded to agency affidavits" (internal quotations omitted)).

B.    *In Camera* Review

The Court rejects Hillier's request for *in camera* review of certain records in DHS/ALL-031. *See* Pl.'s Br. at 7. As a threshold matter, it is unclear which records Hillier seeks to examine *in camera* given that DHS found no responsive records in DHS/ALL-031. As noted, Hillier did not challenge the *Glomar* response to DHS/ALL-030, but instead appears to contest DHS's invocation of 5 U.S.C. § 552(c), which exempts certain categories of records from disclosure. *See* Pl.'s Br. at 7. But DHS has not invoked 552(c) to withhold any records. *See* Def.'s Br. at 7–9. Further, *in camera* review is appropriate only (1) when the affidavits are conclusory or "not described in sufficient detail to demonstrate that the claimed exemption applies," or (2) "if there is evidence of agency bad faith," *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392–93 (D.C. Cir. 1987), and neither circumstance exists here. As discussed, the Henry and Holzer declarations give detailed descriptions of the NSI Shared Space program, which allowed the Office of Intelligence and Analysis to search other DHS components' suspicious activity reports. And Hillier offers no credible evidence of bad faith. *See* Section

III.A., *supra*.

Hillier also argues that because "DHS has made no defense against" his request for an *in camera* review, DHS has conceded this point. But the Court has discretion to decline to conduct an *in camera* review of withheld materials. *Quinon v. F.B.I.*, 86 F.3d 1222, 1227 (D.C. Cir. 1996) ("The decision to conduct an *in camera* review is committed to the broad discretion of the trial court judge." (internal quotation marks omitted)). Because the government has provided detailed affidavits that demonstrate the adequacy of its search and Hillier has not overcome the government's presumption of good faith, the Court declines to conduct an *in camera* review.

## CONCLUSION

For the foregoing reasons, the Court grants DHS's Renewed Motion for Summary Judgment; denies Hillier's Motion for Discovery Conference; and denies Hillier's Motion to Take Judicial Notice. A separate order accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

September 27, 2019